GERALD SINGLETON, SBN 208783
JOHN C. LEMON, SBN 175847
SINGLETON LAW FIRM, APC
450 A Street, 5th Floor
San Diego, CA 92101
Tel: (619) 771-3473
Fax: (619) 255-1515
Email: gerald@slffirm.com
       john@slffirm.com

LORRIE A. WALKER, SBN: 272637
JUSTIN O. WALKER, SBN: 275633
WALKER LAW, PC
501 West Broadway, Suite 1620
San Diego, CA 92101
Tel: (619) 839-9978
Email: lorrie@walkerlawsd.com
       justin@walkerlawsd.com

TIMOTHY A. SCOTT, SBN 215074
NICOLAS O. JIMENEZ, SBN 295057
SCOTT TRIAL LAWYERS, APC
1350 Columbia Street, Suite 600
San Diego, CA 92101
Telephone: (619) 794-0451
Facsimile: (619) 652-9964
Email: tas@scotttriallawyers.com
       noj@scotttriallawyers.com

Attorneys for Plaintiff TRALOM, INC. dba
THE RANCH AT LIVE OAK MALIBU, a California Corporation

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRALOM, INC. dba THE RANCH AT LIVE OAK MALIBU, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BEAZLEY USA SERVICES, INC., dba BEAZLEY INSURANCE SERVICES, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff TRALOM, INC., dba THE RANCH AT LIVE OAK MALIBU ("Plaintiff" or "TRALOM") alleges as follows:

## PARTIES

1. Plaintiff TRALOM, INC., dba The Ranch at Live Oak Malibu, is a California corporation with its principal place of business in city of Malibu, county of Ventura. At all times relevant herein, TRALOM owns, operates, manages, and/or controls The Ranch at Live Oak Malibu, a health and wellness camp, with in-camp dining and accommodations. The Ranch at Live Oak Malibu is located at 12220 Cotharin Rd, Malibu, CA 90265, which is comprised of a sprawling ranch with numerous individual guest cottages and buildings. ("the Insured Property"). In addition to The Ranch Malibu location, Plaintiff owns and operates affiliate programs in and around Ventura and Los Angeles County, and summer retreat programs through The Ranch 4.0 in Italy.

2. Defendant BEAZLEY USA SERVICES, INC., dba BEAZLEY INSURANCE SERVICES, ("BEAZLEY") is a Delaware corporation authorized to do business in the State of California. At all times relevant herein, BEAZLEY has been and is in the business of insurance in the State of California, County of Los Angeles, and the basis of this suit arises out of such business.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff TRALOM is a citizen of California and Defendant BEAZLEY is a citizen of Delaware. Plaintiff is claiming loss of business income in excess of $3.4 million, with losses increasing daily. This Court has personal jurisdiction over Plaintiff because it is incorporated in California, has its principal place of business in Malibu, and the losses of business income incurred by Plaintiff include losses arising out of the suspension and/or limitation of operations of TRALOM's business, The Ranch at Live Oak Malibu, The Ranch 4.0,

The Ranch Global, and The Ranch Retail Shop.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 28 U.S.C. § 1391(c)(2) and(d) because Plaintiff is deemed to reside in this District, where there is personal jurisdiction over Plaintiff and a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

**A.     The COVID-19 Pandemic**

5. Coronavirus disease (COVID-19) is caused by a novel virus SARS-CoV-2, which is responsible for severe acute respiratory illness and sometimes death. Since its earliest known infection in humans sometime around December 2019, coronavirus and the resulting disease COVID-19 has spread like wildfire, and now infects more than 16.8 million people worldwide.

6. As early as January 2020, COVID-19 had reached the United States and spread quickly across the country. The Center for Disease Control and Prevention ("CDC") advised in February 2020 that COVID-19 was spreading rapidly and freely, and the CDC lacked the ability to trace the origin of new infections (also known as "community transmission"). COVID-19 is highly contagious, can transmit easily via aerosols for hours and on surfaces including stainless steel, plastic, and cardboard for days, and can be fatal.

7. On March 11, 2020, the World Health Organization ("WHO") declared COVID-19 to be a pandemic.

8. According to the WHO, "COVID-19 spreads between people through direct, indirect (through contaminated objects or surfaces), or close contact with infected people via mouth and nose secretions. These include saliva, respiratory secretions or secretion droplets. These are released from the mouth or nose when an infected person coughs, sneezes, speaks or sings, for example. People who are in close

contact (within 1 metre) with an infected person can catch COVID-19 when those infectious droplets get into their mouth, nose or eyes."[1]

9. The CDC advises that "COVID-19 is thought to spread mainly through close contact from person-to-person. Some people without symptoms may be able to spread the virus… It may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or possibly their eyes."[2]

10. In the April 16, 2020 edition of the *New England Journal of Medicine*, researchers from UCLA, Princeton University, the National Institute of Allergy and Infectious Diseases, and the Centers for Disease Control and Prevention published a scientific study comparing the Aerosol and Surface Stability of SARS-CoV-2 (novel coronavirus) to an earlier coronavirus, SARS-CoV-1. The study reports that the novel coronavirus persisted in their tests up to 72 hours on plastic and stainless steel.[3]

11. Beazley has acknowledged the dangers of COVID-19 via its corporate website and has announced that all Beazley staff will work remotely from home to reduce the spread of COVID-19 within its own communities and work force. *See* https://www.beazley.com/beazleys_response_to_covid-19.html (last checked on July 29, 2020).

12. Studies show that COVID-19 can be especially dangerous due to the ability to spread the virus from person to person without experiencing symptoms. This asymptomatic spread by seemingly healthy people can happen through close contact, talking, breathing, coughing, sneezing, and touching surfaces.

13. Ventura County Public Health issues daily reports on coronavirus cases in Ventura County, and as of August 2020, more than 8,700 people were infected,

---

[1] Q&A: How is COVID-19 transmitted? World Health Organization website (July 9, 2020) https://www.who.int/news-room/q-a-detail/q-a-how-is-covid-19-transmitted
[2] How COVID-19 Spreads, Centers for Disease Control and Prevention website (June 16, 2020) https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html
[3] *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, N Engl J Med 2020 (April 16, 2020)

3
COMPLAINT FOR DECLARATORY RELIEF

1  with over 90 deaths[4]. In Los Angeles County, a COVID-19 hotspot, as of August
2  2020, more than 210,000 known cases of coronavirus existed with more than 4,900
3  deaths[5].

**B.    Government Orders & Business Closures**

14.    On March 4, 2020, California Governor Newsome proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19.

15.    On March 12, 2020, California Governor Newsom issued Executive Order N-25-20, which required all California residents to "heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19."

16.    On March 12, 2020, Ventura County Health Officer issued a local health emergency order based on the "imminent and proximate threat of COVID-19 spread in the County of Ventura and the threat to the public health of County residents" urging social isolation of residents and ordering the closure of public schools.

17.    On March 17, 2020, Ventura County Health Officer issued "Shelter in Place" Order requiring all non-essential businesses to close and all residents to maintain social distance and stay indoors. The Order authorized local police and sheriffs in the County to ensure compliance and enforce the Order.

18.    On March 19, 2020, City of Los Angeles Mayor Eric Garcetti issued "Safer at Home" order, urging residents to "isolate themselves in their residences…" and ordering all persons to remain in their homes because "the COVID-19 virus can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time."[6]

19.    On March 19, 2020, Governor Newsom issued Executive Order N-33-

---

[4] Ventura County Coronavirus Case Information (August 11, 2020) https://www.venturacountyrecovers.org/
[5] County of Los Angeles, Public Health, COVID-19 Data (August 11, 2020) http://publichealth.lacounty.gov/media/coronavirus/data/index.htm
[6] Public Order Under City of Los Angeles Emergency Authority, Issue Date March 19, 2020.

4
COMPLAINT FOR DECLARATORY RELIEF

20, which required all non-essential businesses statewide to close their doors to all customers.

20. On March 17, 2020, European Union Member States agreed on coordinated action at the external borders, based on the recommendation by the European Commission, to restrict non-essential travel into affected countries, including Italy[7]. These travel restrictions were gradually lifted for certain countries, the United States *not* included.[8]

**C.    The Ranch at Live Oaks Malibu**

21. Plaintiff Tralom, Inc. owns and operates The Ranch at Live Oaks Malibu ("The Ranch"), a health and wellness retreat camp for guests wanting to achieve fitness and nutrition results. Founded over 10 years ago, The Ranch has continually expanded and grown every year to offer new programs and initiatives to better serve its clientele.

22. The Ranch's offerings and programs consist of four major components: The Ranch Malibu, The Ranch 4.0, The Ranch Global, and The Ranch Retail Shop.

23. The Ranch Malibu is an in-person, week long retreat for a maximum of 19 guests per week. A results-oriented, luxury fitness and wellness program, guests arrive Sunday, followed by an intense, choreographed fitness and nutrition agenda. Guests experience detoxification through daily fitness classes, outdoor group hiking, yoga, massage, stretching, and a prepared organic and vegan menu. Guest accommodations are located on-site. The Ranch Malibu program includes group-oriented activities and classes, as well as on-site restaurant dining and individual spa services.

/ / /

---

[7] Communication from the Commission to the European Parliament, The European Council and The Council: COVID-19: Temporary Restriction on Non-Essential Travel to the EU, Issue Date March 16, 2020.
[8] Lifting of Travel Restrictions: Council Reviews the List of Third Countries, Press Release August 7, 2020 <https://www.consilium.europa.eu/en/press/press-releases/2020/08/07/lifting-of-travel-restrictions-council-reviews-the-list-of-third-countries/> Last checked August 28, 2020.

24. As a result of the COVID-19 pandemic and government shutdown orders, The Ranch Malibu program was completely shut down as of March 19, 2020, with no guests or services offered whatsoever. On July 6, 2020, The Ranch Malibu was able to partially reopen, however additional staff was required to adhere to local and state regulations. As such, expenses are much higher and profits have been significantly reduced.

25. The Ranch 4.0 is similar to The Ranch Malibu program; however, it is shorter to accommodate guests who cannot commit to the entire week-long retreat. The Ranch 4.0 lasts from Thursday to Monday, with the same general format as The Ranch Malibu and the same staff and culinary team. The Ranch 4.0 is located off-site at the Four Seasons Hotel and Resort in Westlake Village, California, and utilizes the Four Seasons' spa to provide the program's massage and spa services.

26. As a result of the pandemic and government closure orders, The Ranch 4.0 program completely ceased on March 19, 2020, and has been unable to reopen in any capacity due to the Four Seasons inability to reopen the spa to guests. At this point, there is no estimation as to when The Ranch 4.0 will reopen and resume operations.

27. The Ranch Global is a third division of The Ranch's operations and programs. The Ranch Global began in 2018 as a highly lucrative and exclusive 8-week summer abroad program. The Ranch Global is an all-inclusive program which hosts 22 guests per week for a wellness retreat located in Italy.

28. The Ranch Global 8-week program was sold out for 2020, and as a result of the pandemic and global travel restrictions, The Ranch Global program 2020 was cancelled and each and every guest deposit was refunded.

29. Lastly, The Ranch Retail Shop consists of a brick and mortar shop located at The Ranch Malibu as well as an online retail shop with "The Ranch" branded merchandise, food and supplements, and body and skincare products used during the programs. With the closure of The Ranch Malibu operations, as well as the

cessation of other related programs, Plaintiff suffered financial losses in both the in-person and online retail shop.

30. In addition to the scheduled and reserved programs The Ranch was required to cancel, several new and exciting initiatives in the works at the time of the government closure orders were put on hold. Plaintiff had plans to expand The Ranch Global's operations with "pop-up" programs in exotic, luxury locations. Plaintiff was forced to cancel initiatives in Switzerland, Egypt, and Nicaragua due to flight restrictions and pandemic concerns.

D. **Beazley's Commercial Property Policy**

31. In exchange for a considerable premium, Beazley Insurance Services issued Commercial Property Policy no.: W28498190101 to Tralom, Inc. with a policy period from August 12, 2019 through August 12, 2020 ("the Policy"). The Policy provided for limits of insurance in the amount of $5,000,000, which included "Business Income" coverage. The named insureds to the Policy include Tralom, Inc., The Ranch at Live Oak Malibu, The Ranch 4.0, and The Ranch Global.

32. At all relevant times, the insured Tralom, Inc., timely paid its premiums and the Policy remained in full force and effect.

33. The Policy specifically provides **Business Income** coverage, and the insuring clause states, in pertinent part, "[w]e will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property… The loss or damage must be caused by or result from a Covered Cause of Loss."

34. The Policy's Business Income coverage provides for Additional Coverages, in pertinent part, as follows:

    **a. Expenses to Reduce Loss**

    In the event of a covered loss of Business Income, we will pay necessary expenses you incur… to avoid further loss of Business Income.

…

    **b. Civil Authority**

    We will pay for the actual loss of Business Income you sustain caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage begins 72 hours after the time of that action, and will apply for a period of up to three consecutive weeks from the date on which the coverage begins.

### E. Tralom's Claim and Beazley's Denial

35. Coverage under the Policy's Civil Authority Business Income Coverage was triggered when a complete shutdown of The Ranch's operations was required as a direct result of the closure orders issued by the State of California and local authorities. As a result of the "stay at home" orders, The Ranch was forced to close its doors, and all pending reservations, classes, treatments, and programs were cancelled.

36. Tralom, Inc. dba The Ranch suffered immense financial losses as a result of the government shutdown orders and the resulting closure of its business. As such, on March 18, 2020, the insured provided notice to Beazley of a claim under its business interruption coverage, and informed Beazley that due to the city, state, and federal orders requiring all nonessential businesses to shut down – particularly business that serve food and have a gathering of more than 10 people – Tralom lost a tremendous amount of reservations, was forced to provide refunds, and continued to lose substantial revenue daily.

37. In response to the claim, Beazley sent Plaintiff a denial letter wherein Beazley stated that no coverage existed for the damages suffered by Plaintiff because, *inter alia,* there was no "direct physical loss or damage to property" and that coverage was excluded under the Microorganism Exclusion.

38. In contrast to Beazley's erroneous coverage position, the government closure orders which directly affected Plaintiff were issued due to the proliferation of COVID-19 onto virtually every surface and object in, on and around The Ranch and its surrounding environment. COVID-19 caused and is continuing to cause direct physical damage and loss to the immediate area in and around Plaintiff's business. Furthermore, the direct physical damage caused by COVID-19's adherence to surfaces has prevented Plaintiff from accessing the property and utilizing the property as it was intended for business purposes.

39. Additionally, the Microorganism Exclusion provides that the Policy does not insure any loss arising out of or directly related to "mold, mildew, fungus, spores, or other microorganism…" Importantly, this exclusion does NOT exclude coverage for "viruses" or exclude coverage for damages which may be caused by a pandemic.

40. The economic effect of COVID-19, the resulting property damage, and the government orders on Southern California businesses, including Plaintiff, has been devastating. The Ranch at Live Oaks Malibu and related entities suffered and continue to suffer significant losses from the closure of its facilities and the related losses from the COVID-19 pandemic.

41. Plaintiff planned ahead and purchased insurance to safeguard against the business interruption and financial hardship that results from precisely the type of civil authority closure orders at issue in this lawsuit. Since having to close their doors, independent business such as Plaintiff have filed claims for business interruption coverage with their insurance companies as a lifeline to save their businesses, employees, and communities. However, Beazley, and other insurance companies, have summarily declined coverage. The goal of insurance companies is to generate revenue by charging high premiums for insurance while avoiding paying *anything* on legitimate claims by family run businesses like Plaintiff.

42. The government closure orders affected all facets of The Ranch's business and forced The Ranch to cease operations – including on-site restaurant

1  dining, spa services, fitness classes, and travel for The Ranch Global operations. As a
2  result, The Ranch suffers and continues to suffer substantial financial loss.

## FIRST CAUSE OF ACTION

## DECLARATORY RELIEF

**(By Plaintiff against All Defendants and Does 1 through 10)**

43.  Plaintiff realleges and incorporates by reference, inclusive, as though set forth fully herein, all of the allegations and statements contained in the preceding paragraphs.

44.  Under California Code of Civil Procedure section 1060, *et seq.*, the court may declare rights, duties, statuses, and other legal relations, regardless of whether further relief is or could be claimed.

45.  An actual controversy has arisen between Plaintiff and Defendants as to their respective rights and duties under the Policy.

46.  Resolution of the parties' respective rights and duties under the Policy by declaration of the Court is necessary, as there exists no adequate remedy at law.

47.  Plaintiff alleges and contends, with respect to the Policy's Civil Authority coverage, that each of the Closure Orders referenced herein triggers coverage because (a) each of the closure orders is an order of a civil authority; (b) each of the closure orders specifically prohibits access to the Insured Property by prohibiting all potential on-premises clientele and staff from accessing the Insured Property; (c) said prohibition of access by each of the closure orders has been continuous and ongoing since the orders were issued, such that access has not substantially be permitted; (d) each of the closure orders prohibits said access as the direct result of a Covered Cause of Loss in the immediate area of the Insured Property; (e) no Policy coverage exclusions or limitations apply to exclude or limit coverage; (f) Plaintiff has suffered actual and covered loss of Business Income in an amount to be determined; and (g) coverage should begin as of March 19, 2020.

/ / /

48. Plaintiff alleges and contends that the Policy's Business Income coverage is triggered because (a) Plaintiff has sustained actual loss of Business Income due to the closure of The Ranch Malibu, The Ranch 4.0, The Ranch Global, and The Ranch Retail Shop; (b) said closure constitutes a necessary suspension of Plaintiff's operations under the Policy; (c) this suspension has been and is caused by direct physical loss of or physical damage to the Insured Property, including personal property in the open within 100 feet of the Insured Property, due to the presence of coronavirus; (d) the presence of coronavirus is a Covered Cause of Loss; and (e) some or all of the period of Plaintiff's closure is within the period of restoration under the Policy.

49. Plaintiff alleges and contends that Beazley wrongfully denied coverage with respect to the foregoing provisions.

50. Upon information and belief, Plaintiff alleges that Defendants dispute and deny each of Plaintiff's contentions set forth in this Cause of Action.

51. Plaintiff, therefore, seeks a declaratory judgment regarding each of Plaintiff's contentions set forth herein. A declaratory judgment determining that Plaintiff is due coverage under the Policy, as set forth above, will help ensure the survival of its business during this prolonged closure made necessary by the government closure orders and by the presence of the coronavirus at and around the Insured Property during this global pandemic.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For a declaration that the various stay-at-home closure orders issued throughout California and globally constitute civil authority that prohibits access (or significantly limits access) to Plaintiff's Insured Property.

2. For a declaration that such prohibition of access pursuant to civil authority is a covered cause of loss as defined in the Policy.

3.     For a declaration that such prohibition of access was necessitated by physical loss of or damage to the Insured Property.

4.     For a declaration that this civil authority prohibiting access to the Insured Property triggers coverage under the Policy as business income loss despite the Microorganism Exclusion which does not reference viruses or pandemics.

5.     For a declaration that the Policy provides coverage to Plaintiff for any current and future civil authority closures of commercial buildings in California due to physical loss or damage from the novel coronavirus under the Civil Authority coverage parameters and the Policy provides business income coverage in the event that COVID-19 has caused a loss or damage at the Insured Property or immediate surrounding area.

6.     For such other relief as the Court may deem just and proper.

Dated: September 11, 2020        Respectfully submitted,

                                            _s/ Gerald Singleton_
                                            GERALD SINGLETON
                                            JOHN C. LEMON
                                            Attorneys for Plaintiff TRALOM, INC. dba THE RANCH AT LIVE OAK MALIBU, a California Corporation